ROBERT D. EASSA, State Bar No. 107970
**BROWN EASSA & McLEOD LLP**
1999 Harrison Street, Suite 1800
Oakland, California 94612-3520
Telephone: (510) 444-3131
Facsimile: (510) 839-7940
Email: reassa@browneassa.com

MICHAEL A. CIFELLI
(*Pro Hace Vice Admission Pending*)
**SCARINCI & HOLLENBECK, LLC**
1100 Valley Brook Ave., P.O. Box 790
Lyndhurst, NJ 07071-0790
Telephone: (201) 896-4100
Facsimile: (201) 896-8660
Email: MCifelli@scarincihollenbeck.com

Attorneys for Defendant Doe # 733

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO**

NEW SENSATIONS, INC., a California Corporation,

Plaintiff,

v.

Does 1-1745,

Defendants.

Civil Docket No. 3:10-cv-05863-MEJ

**NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT PURSUANT TO FRCP 12(B)(2) AS TO DOE #733, OR IN THE ALTERNATIVE TO DROP DOE #733 PURSUANT TO FRCP 21, AND TO QUASH PLAINTIFF'S SUBPOENA TO CABLEVISION AS IT RELATES TO DOE#733; AND MEMORANDUM OF POINTS AND AUTHORITIES**

Hearing Date: July 28, 2011
Time: 10:00 a.m.
Location: Courtroom B, 15th Floor

Honorable Maria-Elena James



# TABLE OF CONTENTS

Page

I. FACTUAL AND PROCEDURAL HISTORY ..... 1

II. ISSUES TO BE DECIDED ..... 1

III. TECHNICAL AND LEGAL BACKGROUND ..... 2

A. Internet Protocol Addresses ..... 2

1. Definition ..... 2

2. Purpose ..... 2

B. Plaintiff's Complaint Should be Dismissed for Lack of In Personum Jurisdiction over Defendant Doe #733 Pursuant to FRCP 12(b)(2) ..... 4

C. Doe #733 has not committed an "intentional" act as defined by Brayton ..... 7

D. Because the Court Lacks Personal Jurisdiction Over Doe #733, the Subpoena for Moving Defendants' Records with Cablevision Should be Quashed ..... 10

E. Because the Joinder of All Defendants is Improper in This Action, Doe #733 Should be Dismissed and the Subpoena Quashed ..... 11

F. Plaintiffs Are Improperly Seeking the Benefits of Multidistrict Litigation ("MDL") Without First Complying With the MDL Requirements ..... 13

IV. CONCLUSION ..... 14

# TABLE OF AUTHORITIES

**Page**

**Cases**

Arista Records LLC v. Does 1-16, No. 1:08-CV-765 (GTS/RFT), 2009 WL 414060 ................. 12

Ashcroft v. Iqbal, 129 S. Ct. 1937 ................. 9, 10

Atlantic Recording Corp., et al. v. Does 1-151, No. A-04-CA-636 SS ................. 12

BMG Music v. Does 1-4, No. 3:06-cv-01579-MHP, 2006 U.S. Dist. LEXIS 53237 ................. 12

Brayton Purcell LLP v. Recordon & Recordon, 606 F. 3d 1124 ................. 5, 6, 7, 8, 9

Calder v. Jones, 465 U.S. 783 ................. 6

Columbia Ins. Co. v. SEESCANDY, Inc., 185 F.R.D. 573 ................. 11

Columbia Pictures, 106 F.3d 289 ................. 5, 6

Elektra Entm't Group, Inc. et al. v. Does 1-11, No. A-04-CA-703 LY ................. 12

Elektra Entm't Group, Inc. v. Does 1-9, No. 04 Civ. 2289 (RWS), 2004 WL 2095581, at *8 ...... 13

Fonovisa, Inc. et al. v. Does 1-41, No. A-04-CA-550 LY ................. 12

Hanson v. Denckla, 357 U.S. 235 ................. 10

Holland Am. Line Inc. v. Wartsila N. Am., Inc., 485 F.3d 450 ................. 8

In re: Library Editions of Children's Books, 299 F. Supp. 1139 ................. 13

International Shoe Co. v. Washington, 326 U.S. 310 ................. 5

LaFace Records, LLC v. Does 1-38, No. 5:07-CV-298-BR, 2008 WL 544992 ................. 12

LYRC Holdings v. Brekka, 581 F.3d. 1127 ................. 2

Omni Capital Int'l v. Rudolf Wolff & Co., 484 U.S. 97 ................. 4

Pebble Beach, 453 F.3d 1155, 1156, 1158 ................. 6, 7, 8

Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797 ................. 6, 7, 8

Tele-Media Co. of Western Connecticut v. Antidormi, 179 F.R.D. 75 ................. 12

U.S. v. Heckenkamp, 482 F.3d. 1142 ................. 2

UMG Recordings, Inc. et al. v. Does 1-51, No. A-04- CA-704 LY ................. 12

World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286 ................. 5

## TABLE OF AUTHORITIES
**(continued)**

**Page**

Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199 ........................ 6

**Statutes**

28 U.S.C. § 1400(a) ........................ 5

28 U.S.C. § 1407 ........................ 13, 14

28 U.S.C. § 1407(a) ........................ 13

Federal Rule of Civil Procedure, Rule 12 ........................ 1, 4

Federal Rule of Civil Procedure, Rule 12(b)(2) ........................ 1

Federal Rule of Civil Procedure, Rule 20 ........................ 11

Federal Rule of Civil Procedure, Rule 21 ........................ 1, 13

Federal Rule of Civil Procedure, Rule 45(c)(3)(A)(iv) ........................ 10

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on July 28, 2011 at 10:00 a.m. or as soon thereafter as counsel may be heard in Courtroom B of the above-entitled Court located at 450 Golden Gate Avenue, San Francisco, California, Defendant Doe #733 will move for an Order dismissing the Complaint pursuant to Federal Rule of Civil Procedure, Rule 12(b)(2) (lack of personal jurisdiction), or in the alternative for an Order dropping Defendant Doe #733 as a party pursuant to Federal Rule of Civil Procedure, Rule 21. Defendant Doe #733 will also move this Court for an Order quashing Plaintiff's subpoena issued to Cablevision as it relates to Defendant Doe #733. This Motion is based upon this Notice of Motion and Motion, the following Memorandum of Points and Authorities, the accompanying declaration of Michael A. Cifelli, and the exhibits attached thereto.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. FACTUAL AND PROCEDURAL HISTORY

On or about December 25, 2010, plaintiff New Sensations, Inc. ("Plaintiff") filed a Complaint in the United States District Court for the Northern District of California alleging, in pertinent part, that 1,745 persons, named as "Does", downloaded a movie—"The Office: A XXX Parody"—to which Plaintiff claimed to own the exclusive copyright. (Exhibit A to the accompanying Declaration of Michael A. Cifelli [hereinafter "Cifelli Decl."]). Plaintiff asserts that it does not know the true names or identities of the persons who allegedly downloaded its movie via a BitTorrent peer-to-peer protocol ("P2P") and so it made a motion for discovery to allow it to issue subpoenas to various Internet Service Providers ("ISPs") seeking "the name, addresses, telephone numbers, and e-mail addresses of ISP's documents sufficient to identify the subscribers assigned to the IP addresses identified on attachment A." (Exhibit B to Cifelli Decl.)

This Motion to Dismiss and Motion to Quash follows.

## II. ISSUES TO BE DECIDED

The following issues are presented by this motion: (1) whether the Complaint should be dismissed pursuant to FRCP 12(b)(2) for lack of in personam jurisdiction over Doe #733; (2)

whether Doe #733 should be dropped as a party pursuant to FRCP 21 for improper joinder; and (3) whether Plaintiff's subpoena directed to Cablevision should be quashed.

## III. TECHNICAL AND LEGAL BACKGROUND

### A. Internet Protocol Addresses

1. Definition

Any customer of an ISP, such as the Doe #733, who connects their computer to the internet via the ISP is assigned an Internet Protocol (IP) address. *See also* U.S. v. Heckenkamp, 482 F.3d. 1142, 1144 fn.1 (9th Cir. 2007) ("An IP address is comprised of four integers less than 256 separated by periods"). In addition to the customer's IP address, the ISP's network is also assigned its own IP address. *See generally* LYRC Holdings v. Brekka, 581 F.3d. 1127,1130 (9th Cir. 2009). A customer's IP address can either be "static" or "dynamic."

A "static" IP address is assigned manually by an administrator. It remains constant over time whether or not the computer and router are turned on or not. If the computer and/or router are turned off, when they are turned back on the ISP will reassign the same address to all computers on its network which have been designated as "static" IPs.[1] By contrast, a "dynamic" IP address is reassigned by the ISP to the customer periodically within certain parameters set by the ISP's network. By simple illustration, a "static" IP is one which is owned by the individual or entity, whereby a "dynamic" IP is leased by an individual or entity through providers such as Verizon, Cox or Comcast.

2. Purpose

An IP address serves two functions: network interface identification and address location, and effectively routing traffic through the network. The role of the IP address has been described as, "A name indicates what we seek. An address indicates where it is. A route indicates how to get there."[2]

In laymen's terms, IP addresses serve as a useful tool to determine the general geographic

---

[1] Wikipedia, *IP Address: IP Address Assignment: Methods*, http://en.wikipedia.org/wiki/IP_address#cite_note-rfc791-1 (last visited June 13, 2011).

[2] Wikipedia, *IP Address*, http://en.wikipedia.org/wiki/IP_address#cite_note-rfc791-1 (last visited June 13, 2011) (citing RFC 791, Internet-Protocol DARPA Internet Protocol specification (September 1981)).





location of both the ISP and the user. A number of public domain tools are available on the internet, such as WHATISMYIPADDRESS.com, available at http://whatismyipaddress.com, to determine the city, State, and country where an IP address is located. For example, a query submitted to WHATISMYIPADDRESS.com on the IP address listed on Plaintiff's subpoena for Doe #733, returns the following result as shown in Chart 1, below:

**Chart l**—General IP Information 69.127.9.125

| Hostname: | ool-457f097d.dyn.optonline.net |
|---|---|
| ISP: | Optimum Online |
| Organization: | Optimum Online |
| Proxy: | None detected |
| Type: | Broadband |
| Assignment: | Static IP |
| Blacklist | |

Thus, with minimal effort and a few clicks, Plaintiff's counsel (or anyone else) could have discovered that the IP addresses which are the subject of their subpoena receive internet service through Cablevision. In turn, a user can access a free tool like http://whatismyipaddress.com and discover where the holder of the IP address is physically located. Entering "69.127.9.125" renders the following result in Chart 2.

**Chart 2**-Geolocation Information

General IP Information

Top of Form

| Hostname: | ool-457f097d.dyn.optonline.net |
|---|---|
| ISP: | Optimum Online |
| Organization: | Optimum Online |
| Proxy: | None detected |
| Type: | Broadband |
| Assignment: | Static IP |
| Blacklist | |



BROWN EASSA

Geolocation Information

| Country: | United States |
|---|---|
| State/Region: | New Jersey |
| City: | Mahwah |
| Latitude: | 41.078 |
| Longitude: | -74.1764 |
| Area Code: | 201 |
| Postal Code: | 07430 |

Thus, without any of the information sought in the subpoena, Plaintiff already **knows** that Doe #733 is located in Mahwah, New Jersey, on the date and time of the alleged infringement. Doe #733 is therefore not subject to this Court's jurisdiction, as further set forth below.[3]

**B. Plaintiff's Complaint Should be Dismissed for Lack of In Personum Jurisdiction over Defendant Doe #733 Pursuant to FRCP 12(b)(2).**

A motion to dismiss for lack of personal jurisdiction permits a non-resident defendant to challenge a court's jurisdiction over the defendant. Specifically, Federal Rule of Civil Procedure, Rule 12, states in pertinent part:

> (b) Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:
> . . .
> (2) lack of personal jurisdiction;

Consistent with Rule 12(b)(2), Doe # 733 alleges that Doe # 733 does not have sufficient contacts with California to justify the Court's jurisdiction in this matter. As such, the improper exercise of jurisdiction Doe #733 would violate Due Process. *See* Omni Capital Int'l v. Rudolf Wolff & Co., 484 U.S. 97, 102-04 (1987).

Specifically, the exercise of jurisdiction over Doe #733 violates Due Process because of the lack of sufficient contact with the host jurisdiction to Plaintiff's Complaint and because to do

[3] The same rationale and reasoning can also be applied for each of the remaining Doe Defendants.



BROWN EASSA

so would violate tradition notions of fair play and substantial justice. *See* World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291-92 (1980).

In order to satisfy Due Process, before a foreign jurisdiction can exercise personal jurisdiction over a non-resident defendant, the defendant must have purposefully availed himself or herself of the benefits and protections of the State's laws by establishing "minimum contacts" with the foreign jurisdiction. See International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

To be fair, these constitutional burdens rest on the plaintiff, because defendants should not be forced to have their interests decided by a jurisdiction with which he has had no contact. These requirements "give[ ] a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." World-Wide Volkswagen, 444 U.S. at 297. In International Shoe, the United States Supreme Court noted that the minimum contacts assessment "cannot simply be mechanical or quantitative" in nature, and instead must depend on the "*quality and nature of the activity* in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure." International Shoe, 326 U.S. at 319.

Recently, the Ninth Circuit Court of Appeals reiterated the standard to determine whether a defendant has sufficient minimum contacts for the court to exercise jurisdiction. In Brayton Purcell LLP v. Recordon & Recordon, 606 F. 3d 1124 (9th Cir. 2010), the Court of Appeals stated that:

> In copyright infringement actions, venue is proper "in the district in which the defendant or his agent resides or may be found." 28 U.S.C. § 1400(a). The Ninth Circuit interprets this statutory provision to allow venue "in any judicial district in which the defendant would be amenable to personal jurisdiction if the district were a separate state." *Columbia Pictures,* 106 F.3d at 289.
>
> This Court employs a three-prong test to determine whether a party has sufficient minimum contacts to be susceptible to specific personal jurisdiction:





BROWN EASSA

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir.2004) (quoting Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir.1987)) (emphasis supplied).

Here, Plaintiff's Complaint avers jurisdiction under the first prong of Brayton. In turn, the Ninth Circuit describes a three-prong test that must meet this criteria:

> The first prong is satisfied by either purposeful availment or purposeful direction, which, though often clustered together under a shared umbrella, "are, in fact, two distinct concepts." *Pebble Beach,* 453 F.3d at 1155. "A purposeful availment analysis is most often used in suits sounding in contract. A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort." *Schwarzenegger*, 374 F.3d at 802 (internal citations omitted). Here, the underlying action is copyright infringement, which is often characterized as a tort. *See*, *Columbia Pictures,* 106 F.3d at 289 (likening willful copyright infringement to an intentional tort). Purposeful direction is therefore the proper analytical framework in this case. *See* *Schwarzenegger*, 374 F.3d at 802.
>
> This court evaluates purposeful direction using the three-part "*Calder*-effects" test, taken from the Supreme Court's decision in *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). *See* *Schwarzenegger*, 374 F.3d at 803. Under this test, "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme,* 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc) (internal quotation marks omitted). There is no requirement that the





> defendant have any physical contacts with the forum. *See Schwarzenegger*, 374 F.3d at 803.

For the reasons below, the conduct alleged by Plaintiff as to Doe #733 does not rise to a level which would satisfy any of the prongs enumerated by the court in Brayton.

**C. Doe #733 has not committed an "intentional" act as defined by *Brayton*.**

This Court "construe[s] 'intent' . . . as referring to an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Id.* at 806. As alleged by Plaintiff, Doe #733 did not physically intrude into the forum jurisdiction nor is it alleged that Doe #733 intended any specific conduct in the forum jurisdiction. (Exhibit A to Cifelli Decl.).

The Ninth Circuit has further defined an "intentional act" within this context as:

> We construe "intent" in the context of the "intentional act" test as referring to an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act. (The result or consequence of the act is relevant, but with respect to the third part of the *Calder* test — "harm suffered in the forum.")

Schwarzenegger, 374 F.3d at 806.

What Plaintiff alleges here is not an intent to perform a physical act "in the real world". (Exhibit A, ¶10, Cifelli Decl.) Rather, Plaintiff alleges that Doe #733 had an intent to accomplish a result or consequence of that act. Therefore, Plaintiff fails to meet the first prong to establish minimum contacts in order to obtain jurisdiction over Doe #733.

Plaintiff's Complaint does not allege that any conduct by Doe #733 was "expressly aimed" at the forum.

The Brayton Court defined the second part of the First Prong for minimum contacts as:

> The second part of the *Calder*-effects test requires that the defendant's conduct be expressly aimed at the forum. *See* Pebble Beach, 453 F.3d at 1156. This Court has emphasized that "'something more' than mere foreseeability [is required] in order to justify the assertion of personal jurisdiction," Schwarzenegger,





> 374 F.3d at 805, and that "something more" means conduct expressly aimed at the forum, *see* Pebble Beach, 453 F.3d at 1156 ("We now conclude that 'something more' is what the Supreme Court described as 'express aiming' at the forum state.") (quoting Bancroft, 223 F.3d at 1087).

Brayton, 606 F.3d at 1129. In other words, the conduct by a Defendant must be aimed at the "Forum" and not the complainant, as alleged here.

There is nothing alleged that Doe #733 was operating within the forum jurisdiction. (Exhibit A to Cifelli Decl.). Even if, for the purpose of this motion, it was alleged that the act of downloading was an act within the forum, such an act would be passive; akin to a passive web operation. *See* Holland Am. Line Inc. v. Wartsila N. Am., Inc., 485 F.3d 450, 460 (9th Cir. 2007) ("We consistently have held that a mere web presence is insufficient to establish personal jurisdiction."); Pebble Beach, 453 F.3d at 1158 ("[W]e reject . . . any contention that a passive website constitutes express[] aiming."). Regardless, there is no allegation in Plaintiff's Complaint that Doe #733 had any presence within the forum jurisdiction, much less was active there. Accordingly, Plaintiff fails to meet the second part of the first prong in Brayton and therefore cannot establish minimum contacts by Doe #733. As such, Doe #733's motion is proper and Plaintiff's Complaint should be dismissed and in turn, its subpoena to Cablevision should be quashed.

Further, the distinction between this matter and Brayton, as well as other cases construing minimum contacts through internet activity, is that here Doe #733 is not alleged to be a web operator such as in Brayton. By not being a web operator, there is not continuity of contact with the forum jurisdiction. Rather, Plaintiff alleges a one-time act by Doe #733.

Even assuming *arguendo* that Plaintiff's allegations are true, Plaintiff has not identified any specific facts in its Complaint that supports a conclusion by this Court that Doe #733 caused any tortious injury by an act within the host forum. Further, Plaintiff has not identified any facts that would support a conclusion that Doe #733 engaged in the regular and persistent contacts with the forum jurisdiction or that Doe #733 derived any revenue in the forum jurisdiction. Although Plaintiff has the benefit of relying on the assertions in its Complaint, it nonetheless remains



BROWN EASSA

Plaintiff's burden to establish that the Court possesses sufficient jurisdiction over a non-resident Defendant. Brayton, 606 F.3d at 1127.

This principle was reinforced by the U.S. Supreme Court's holding last term in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009). In Iqbal, the Court held that "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that **because they are no more than conclusions**, are not entitled to the assumption of truth." Iqbal, 129 S. Ct. at 1950 (emphasis added).

The Iqbal Court recognized that a motion to dismiss usually, if not always, comes before the Court prior to discovery. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 129 S. Ct. at 1950. Plaintiff's Complaint, however, lacks any such "well-pleaded factual allegations" relevant to the Court's personal jurisdiction over Doe #733.

Plaintiff asserts "Although the true identity of each Defendant is unknown to Plaintiff at this time, on information and belief, each Defendant may be found in this District and/or a substantial part of the acts of infringement complained of herein occurred in this District." (Exhibit A, ¶ 2, Cifelli Decl.). Plaintiff, however, fails to identify ***any*** facts in support of these bare legal conclusions, much less any facts which are specific to Doe #733, as opposed to the other 1,744 defendants in the action. In fact, the very information Plaintiff ***uses*** to support its claim of infringement against Doe #733 generally, mainly, the offending IP address, indicates that Doe #733 does not reside in this District (See Exhibit B to Cifelli Decl.).

Plaintiff's other assertions fare no better when weighed under the scales of Iqbal decision. In a shot gun approach, Plaintiff claims all Doe Defendants, "without permission or consent of Plaintiff, reproduced or distributed to the public at least a substantial portion of Plaintiff's copyrighted work . . ." (Exhibit A, ¶ 10, Cifelli Decl.). The global allegation by Plaintiff is asserted without any specific allegation that alleged offending conduct occurred in the host jurisdiction. There is certainly no allegation that Doe #733 performed any offending conduct within this District.

It would be difficult to draft a ***more*** vague and general claim, comprised as it is of purely conclusory statements that the Court possesses personal jurisdiction over all Defendants, including Doe #733 post-Iqbal than the one filed by Plaintiff. Plaintiff identifies **no** facts which would support a finding that Doe #733 performed any act within this District, nor any facts which would support a claim that Moving Defendants engaged in any "persistent course of conduct" inside the District or derived **any** revenue, let alone "substantial" revenue, from the District of Columbia.

Any conduct alleged to have occurred through an ISP is equally unhelpful to Plaintiff's claim. The ISPs are not defendants in this action and even if they were, the Court would still need to evaluate whether or not it possessed personal jurisdiction over each individual Defendant.[4]

Were the mere act of downloading over the internet sufficient to create personal jurisdiction, this court would effectively be stating that any act made on the internet—criminal, tortious, infringing, innocent, or otherwise—would always create the necessary minimum contacts to permit suit in *any* jurisdiction. Despite the rapidity of technological change, the courts have refused to let such change "herald[] the eventual demise of all restrictions on the personal jurisdiction of state courts" or the erosion of these principles. Hanson v. Denckla, 357 U.S. 235, 251 (1958).

**D. Because the Court Lacks Personal Jurisdiction over Doe #733, the Subpoena for Moving Defendants' Records with Cablevision Should be Quashed.**

Pursuant to Federal Rule of Civil Procedure, Rule 45(c)(3)(A)(iv), this Court must quash a subpoena when it appears that the subpoena would subject "a person" to undue burden. For the reasons set forth above, this Court lacks personal jurisdiction over Doe #733. Plaintiff has alleged no facts which would indicate it believes that Doe #733 possess information which would be relevant to this case if Doe #733 was a non-party. Accordingly, if Doe #733 cannot be added

[4] Even if the Court were to assume for the purposes of this Motion that the alleged infringement actually occurred as described by Plaintiff, the proper venue for a lawsuit such as the instant action would either be where the Defendant allegedly downloaded the material (as determined by their IP address) or the venue where their ISP's server was based. For example, in the case of Pat Doe, that would be the federal Court in New York (Yonkers) (where Doe # 574 resides).

to this action as individual Defendants in this Court, than there is no justification for the undue burden placed upon Doe #733, including but not limited to the invasion of Doe #733's privacy associated with the disclosure of Doe #733's name, address and contact information.

The names of persons accessing the internet should not be revealed, breaching their privacy, where a matter is not properly filed. *See* Columbia Ins. Co. v. SEESCANDY, Inc., 185 F.R.D. 573, 578-80 (N.D. Cal 1999) (declining to reveal name of internet poster and finding that a conclusory pleading is insufficient for a plaintiff to meet its burden of establishing that it can withstand a motion to dismiss). Plaintiff's subpoena should therefore be quashed.

**E. Because the Joinder of All Defendants Is Improper In This Action, Doe #733 Should Be Dismissed or Dropped and the Subpoena Quashed.**

Plaintiff's joinder of more than 1,700 defendants in a single action is improper and runs the tremendous risk of creating unfairness and denying individual justice to those sued.

While Federal Rule of Civil Procedure, Rule 20 allows for joinder of individual claims against multiple defendants, it requires that all claims arise from a single transaction or a series of closely related transactions. Specifically:

> Persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

FED. R. CIV. P. 20.

Thus, in order for the *en masse* joinder proposed by Plaintiff to be proper, three conditions must be met: first, the right to relief must be "asserted against them jointly, severally or in the alternative"; second, the claim must "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences"; and finally, there must be a common question of fact or law common to all the defendants. FED. R. CIV. P. 20.

Here, Plaintiff has not asserted any claim that Doe #733 or any of the other Doe Defendants acted in concert with, is a co-conspirator with, or otherwise committed the "same



BROWN EASSA

transaction, occurrence or series of transactions or occurrences" with *any* of the Doe defendants. Rather, each defendant is alleged to have copied portions of the copyrighted work individually, separately, on different times and dates, and across different locations. Although Plaintiff claims that the Doe Defendants continued to distribute and/or share Plaintiff's material, the allegation is that each Doe Defendant continued this activity in an individual capacity with the public at large. (Exhibit A, ¶ 10, Cifelli Decl.).

Joinder based on *separate* but similar acts of copyright infringement over the internet has been repeatedly rejected by courts across the country.[5] Courts have similarly rejected joinder based on use of the same technology. *See* Tele-Media Co. of Western Connecticut v. Antidormi, 179 F.R.D. 75 (D.Conn. 1998) (denying joinder of 104 defendants who each used similar technology to infringe plaintiffs' pay-per-view programming, because defendants did not act in concert).

Here, the only possible connection between the 1,700+ other Doe Defendants and Doe #733, is Plaintiffs' assertion that each is connected to the others via the internet and use of the BitTorrent program to infringe on the Plaintiffs copyrighted work. There is no demonstrable proof showing that Doe #733 either seeded or downloaded the copyrighted work from other individual Doe defendants. Nor do we believe that the Plaintiff could reliably prove such a connection through jurisdictional discovery.

Moreover, Doe #733 and the other individual Defendants may have different defenses available compared to the other Does. Unlike other infringement cases where joinder has been maintained,[6] against a similar, localized and "finite community" of alleged infringers, here there

[5] LaFace Records, LLC v. Does 1-38, No. 5:07-CV-298-BR, 2008 WL 544992, at *2 (E.D.N.C. Feb. 27, 2008) ("[M]erely committing the same type of violation in the same way does not link defendants together for purposes of joinder."); BMG Music v. Does 1-4, No. 3:06-cv-01579-MHP, 2006 U.S. Dist. LEXIS 53237, at *5-6 (N.D. Cal. July 31, 2006) (severing multiple defendants in action where only connection was use of same ISP to allegedly commit infringement); In re Cases Filed by Recording Companies, filed in Fonovisa, Inc. et al. v. Does 1-41, No. A-04-CA-550 LY; Atlantic Recording Corp., et al. v. Does 1-151, No. A-04-CA-636 SS; Elektra Entm't Group, Inc. et al. v. Does 1-11, No. A-04-CA-703 LY; and UMG Recordings, Inc.. et al. v. Does 1-51, No. A-04- CA-704 LY (W.O. Tex. Nov. 17, 2004), RJN Ex. A, (dismissing without prejudice all but first defendant in each off our lawsuits against a total of 254 defendants accused of unauthorized music file sharing).

[6] Arista Records LLC v. Does 1-16, No. 1:08-CV-765 (GTS/RFT), 2009 WL 414060, at *8 (N.D.N.Y. February 18, 2009); Elektra Entm't Group, Inc. v. Does 1-9, No. 04 Civ. 2289 (RWS), 2004 WL 2095581,



BROWN EASSA

are almost two thousand defendants located across the United States, with differing potential defenses available. While it may be convenient for Plaintiffs' attorneys (and their business model) to sue in accordance with a few actions in the District, Plaintiff's convenience is not, and should not be *the* basis for joinder. The same approach taken by Plaintiff here has been rejected by the U.S. District Court for the Northern District of California in 10 Group, Inc. v. Does 1-435, C 10-04382 SI. [Docket Entry 31-10/10/11].

Federal Rule of Civil Procedure, Rule 21 authorizes the Court to cure the improper joinder of parties by acting "on its own . . . at any time," to "drop a party." Accordingly, Doe #733 respectfully request that the Court cure Plaintiff's improper joinder of the thousands of defendants named in this case by severing all but Defendant Doe 1 and dropping the remaining Does, including specifically Doe #733, from this action.

## F. Plaintiffs Are Improperly Seeking the Benefits of Multidistrict Litigation ("MDL") Without First Complying With the MDL Requirements

In pertinent part, 28 U.S.C. section 1407(a) provides "When **civil actions** involving one or more common questions of fact are pending in **different districts**, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings. Such transfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." (Emphasis added).

Since 1968, the United States Panel for Multidistrict Litigation ("Panel"), which is the panel charged by Congress with executing the provisions of 28 U.S.C. section 1407, has considered over 2,000 motions for centralization covering more than 300,000 individual cases (and millions of individual claims) covering everything from product liability to "mass tort" cases like airplane crashes. Assuming a case meets the statutory requirements for consolidation (i.e., at least two cases pending in two different judicial districts), the Panel must decide if consolidation is appropriate. *See generally* In re: Library Editions of Children's Books, 299 F. Supp. 1139 (Jud.Pan.Mult.Lit. 1969).

---

at *8 (S.D.N.Y. September 8, 2004) (not cited).





BROWN EASSA

If Plaintiff truly had a good-faith belief that *some* legitimate reason existed (other than the convenience of Plaintiff's counsel) to consolidate this action in this Court notwithstanding the lack of personal jurisdiction over Doe #733, the MDL statute offers them a clear remedy. What Congress *intended* for plaintiffs in this type of situation to do was to individually sue Defendants in the Courts that *do* possess personal jurisdiction over them and *then* file a motion to consolidate the cases for pretrial purposes as 28 U.S.C. section 1407 contemplates.

What Plaintiff manifestly may ***not*** do is acquire the benefits of an MDL by arbitrary forum shopping rather than by strict compliance with the Panel's rules. In addition to the burden that Plaintiff's disregard of its obligations places upon the Court's scarce judicial resources and the disrespect shown to the Panel by Plaintiff's usurpation of its functions, Plaintiff's behavior has forced the Moving Defendants to incur additional legal fees and costs which would ordinarily not have to have been expended. For these reasons, dismissal of all moving defendants from this action and an award of attorneys' fees and costs in their favor is appropriate.

## IV. CONCLUSION

For all of the foregoing reasons, Defendant Doe #733 respectfully requests that this Court dismiss Plaintiff's Complaint as to Doe #733 pursuant to FRCP 12(b)(2), or in the alternative that this Court drop Defendant Doe #733 as a party to this action pursuant to FRCP 21. Defendant Doe #733 further requests that this Court quash the subpoena served by Plaintiff upon Cablevision.

Dated: June 15, 2011

Respectfully submitted,

**BROWN EASSA & MCLEOD LLP**

By: /s/ Robert D. Eassa
ROBERT D. EASSA

**SCARINCI HOLLENBECK**
MICHAEL A. CIFELLI
(*Pro Hac Vice Admission Pending*)

Attorneys for Defendant Doe # 733



